## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRODIGY PROPERTIES, LLC and ANTONIO BROWN, | ) ) ) | Civil Action No. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BARBARA DOMZALSKI, ANNETTE A. DOMZALSKI and DAVID A. DOMZALSKI, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT IN ACTION FOR DECLARATORY JUDGMENT

AND NOW, come the Plaintiffs, Prodigy Properties, LLC and Antonio Brown, by and through their undersigned counsel, and pursuant to 28 U.S.C. §§ 2201 *et seq.*, bring this Complaint seeking a declaratory judgment against Barbara Domzalski, Annette A. Domzalski and David A. Domzalski, and in support thereof, aver as follows:

## PARTIES

1.     Plaintiff, Prodigy Properties, LLC ("Prodigy") is a manager-managed limited liability company ("LLC") organized and existing under the laws of the State of Delaware with a registered office located at 341 Raven Circle, Wyoming, Kent County, Delaware 19934.

2.     Plaintiff, Antonio Brown ("Mr. Brown" and, together with Prodigy, "Plaintiffs"), is an adult individual domiciled in Florida.

3.     At all relevant times, Antonio Brown was the sole Member of Prodigy.

4.     Upon information and belief, Defendant, Barbara Domzalski ("B. Domzalski"), is an adult individual with an address located at 333 Middlegate Drive, Bethel Park, Pennsylvania 15102.

5.      Upon information and belief, Defendant, Annette A. Domzalski ("A. Domzalski"), is an adult individual with an address located at 333 Middlegate Drive, Bethel Park, Pennsylvania 15102.

6.      Upon information and belief, Defendant, David A. Domzalski ("D. Domzalski" and, collectively with B. Domzalski and A. Domzalski, the "Domzalskis"), is an adult individual with an address located at 333 Middlegate Drive, Bethel Park, Pennsylvania 15102.

7.      Upon information and belief, the Domzalskis are the owners of the building located at 2512-2514 East Carson Street, Pittsburgh, Pennsylvania 15203 (the "Premises").

## JURISDICTION AND VENUE

8.      This Honorable Court has subject matter jurisdiction over this action by virtue of diversity jurisdiction, 28 U.S.C. § 1332, as Plaintiffs and the Domzalskis are citizens of different states, and the amount in controversy exceeds $75,000.00.

9.      This Honorable Court has personal jurisdiction over the Domzalskis under Rule 4(k)(l) of the Federal Rules of Civil Procedure, as the Domzalskis are domiciled in Pennsylvania, own real property located in Pennsylvania, and have consistently transacted business in Pennsylvania with respect to the claims alleged in this action.

10.     Further, this action is being brought pursuant to the federal Declaratory Judgment Act, 22 U.S.C. §§ 2201 *et seq.*

11.     Venue in this judicial district is proper under 28 U.S.C. § 1391 because the Premises are located and a substantial portion of events giving rise to the Parties' dispute occurred in this judicial district.

## FACTUAL BACKGROUND

### The Formation of Prodigy and the Prodigy LLC Agreement

12.     Prodigy was formed by a Limited Liability Company Agreement dated as of September 24, 2015 (the "Prodigy LLC Agreement"), pursuant to and in accordance with the Delaware Limited Liability Company Act, 6 Del. Code §§ 18-101 *et seq.*(the "Act"). A true and correct copy of the Prodigy LLC Agreement is attached hereto as Exhibit "A."

13.     The Prodigy LLC Agreement established Mr. Brown as the sole Member of Prodigy and Angel Business Advisors ("ABA") as the sole initial Manager of Prodigy.

14.     Mr. Brown at no point exercised sole or exclusive control of Prodigy.

15.     Pursuant to the Prodigy LLC Agreement, management and control of Prodigy was "vested in the Manager, which shall have the right, power and authority, on behalf of [Prodigy] and in its name, to exercise all rights, powers and authority of a 'Manager' under the Act and to do all things necessary and proper to carry out the objectives and businesses of [Prodigy] and the duties of a Manager hereunder and under the Act." Ex. A § 8(a).

16.     In contrast to the broad managerial powers afforded to the Manager, "[t]he Member, in its capacity as such, shall not have any right or power to take part in the management or control of the Company or its business and affairs or to act for or bind the Company in any way." Ex. A § 8(c).

17.     However, such provision of the Prodigy LLC Agreement further provides that "[n]otwithstanding the foregoing, the Member has all the rights and powers specifically set forth in this Agreement and, to the extent not inconsistent with this Agreement, in the Act." Ex. A § 8(c).

18.     With respect to the delegation, the Prodigy LLC Agreement expressly granted the Manager the power and authority to delegate to appointed officers or agents "whatever duties,

responsibilities and authority the Manager may desire." Ex A § 8(b). Consistent with this, the Act likewise authorizes managers of an LLC to delegate "rights, powers and duties to manage and control the business and affairs of the limited liability company." 6 Del. Code. § 18-407.

19.     Neither the Prodigy LLC Agreement nor the Act precludes the Manager from appointing the Member as an agent or officer of Prodigy empowered to act on behalf of the company and/or assume duties, responsibilities and authority authorized by the Manager.

20.     Further, as established under the Prodigy LLC Agreement and the Act, Prodigy is an independent LLC wholly separate and distinct from Mr. Brown and, as such, Mr. Brown is not personally liable for the debts, obligations and liabilities of Prodigy.

21.     Specifically, the Act provides that:

> The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

6 Del. Code § 18-303(a).

22.     The Prodigy LLC Agreement likewise adopts limited liability for Members and Managers and, in particular, specifies that "[n]o Member or Manager shall have any liability for the obligations of the Company except to the extent required by the Act." Ex. A § 14.

23.     Beyond registration with the State of Delaware, Prodigy properly exercised corporate formalities, such as maintaining a capitalized bank account for Prodigy separate and apart from any of Mr. Brown's personal bank accounts and obtaining an Employer Identification Number with the Internal Revenue Service.

24.     Prodigy most recently renewed its status as a Delaware LLC in good standing in May 2018 and continues to exist as a registered entity with the state.

**The Lease and Performance Thereunder**

25.     Approximately one year after Prodigy was formed, Prodigy and the Domzalskis entered into a commercial lease, effective as of October 1, 2016 (the "Lease") whereby Prodigy agreed to rent the Premises from the Domzalskis for a period of two (2) years and three (3) months, commencing as of October 1, 2016 and ending as of December 31, 2018.  A true and correct copy of the Lease is attached hereto as Exhibit "B."

26.     Upon information and belief, the Lease was drafted by the Domzalskis and/or representatives of the Domzalskis.

27.     Prodigy intended to renovate and use the Premises for the business purposes of opening and operating a juice bar and gymnasium.

28.     The Domzalskis and Prodigy explicitly acknowledged such intention in the Lease, which provides that Prodigy "shall use and occupy the Premises for the sole purposes of operating a restaurant and gymnasium."  Ex. B § 10.

29.     The Lease required Prodigy to pay rent to the Domzalskis in the amount of $100.00 per month during the October 2016 through December 2016 period, $5,800.00 per month during the January through December 2017 period, and $5,910.00 per month during the January through December 2018 period.  *See* Ex. B. § 4(a).

30.     Each of the Domzalskis executed the Lease in their individual capacities.

31.     Mr. Brown executed the Lease on behalf of Prodigy.  Notably, Mr. Brown ***did not*** execute the Lease in his individual capacity, and the Lease is clear on its face that the ***only*** parties to the Lease are the Domzalskis and Prodigy.

32.     Prodigy accepted the Lease, as executed by Mr. Brown on Prodigy's behalf, and indeed, later ratified Mr. Brown's action in executing the Lease on behalf of Prodigy.

33.     After the Lease was signed, both Prodigy and the Domzalskis commenced performance thereunder: Prodigy by means of paying the rent due under the Lease and the Domzalskis for providing the Premises for Prodigy's use.

34.     Upon execution, From October 1, 2016 until September 1, 2017, both Parties continued to fully perform under the Lease without incident or objection.

**Notices of Default and Attempts at Negotiation**

35.     However, it eventually became apparent to Prodigy that the venture for which Prodigy had entered into the Lease would not come to fruition.

36.     Given that Prodigy had no further use for the Premises once this became apparent, Prodigy took affirmative steps to attempt in good faith to negotiate an early termination of the Lease, which would include measures such as immediately relinquishing possession of the Premises.

37.     Such efforts are reflected in a letter from Prodigy's then-counsel to the Domzalskis, dated August 25, 2017. At the time this letter was sent, Prodigy was fully current on its payment of rent due under the Lease.

38.     Rather than seek a mutually agreeable resolution or accept Prodigy's efforts to negotiate, the Domzalskis took an aggressive, combative approach.

39.     Specifically, in a letter dated September 19, 2017, B. Domzalski informed Mr. Brown (not Prodigy, as was required under the Lease) that the Domzalskis considered Prodigy to be in default under the Lease and accelerated payment of all rents due throughout the remainder of the Lease term (until December 2018), plus a 10% late fee associated with the rent payment for September 2017.

40.     The amount that the Domzalskis demanded in the September 19, 2017 letter totaled $94,700.00.

41.     In a letter dated September 29, 2017 (the "September 29 Letter"), Prodigy's counsel formally notified B. Domzalski that Prodigy was immediately delivering possession of the Premises back to the Domzalskis.

42.     Further, the September 29 Letter instructed B. Domzalski to cease and desist all contact with Mr. Brown, as Mr. Brown was not the tenant of the Premises, and the Lease provided that all notifications regarding the Lease must be sent to Prodigy, not Mr. Brown.

43.     B. Domzalski subsequently sent Prodigy two additional notices of default on October 6, 2017 (in which the Domzalskis demanded $95,280.00, representing all rent due under the Lease through December 2018, and a 10% late fee associated with the rent for September and October 2017) and November 7, 2018 (in which the Domzalskis demanded $95,860.00, representing all rent due under the Lease through December 2018, and a 10% late fee associated with the rent for September, October and November 2017).

44.     Prodigy has advised the Domzalskis that, in light of the circumstances, the amount demanded by the Domzalskis is exorbitant and unjustifiable.

45.     In Spring of 2018, Prodigy and the Domzalskis have attempted to negotiate a mutually-agreeable settlement with respect to their respective positions concerning the Lease and the Premises but have been unable to reach a compromise.

**COUNT I**
**DECLARATORY JUDGMENT**
**(Mr. Brown and Prodigy v. The Domzalskis)**

46.     Plaintiffs hereby incorporate Paragraph 1 through 45 above as if the same were fully set forth herein.

47.     Although Prodigy and the Domzalskis are clearly the only parties to the Lease, counsel for the Domzalskis have repeatedly advised Prodigy that, in the event the parties are unable to resolve their dispute and the Domzalskis initiate legal action, the Domzalskis intend to assert

claims against Mr. Brown in his individual capacity on the theory that the corporate veil of Prodigy should be pierced to reach Mr. Brown and/or that Mr. Brown is somehow otherwise liable for the lease obligations in his personal capacity.

48.     The exceptional circumstances required to impose the disfavored remedy of piercing Prodigy's corporate veil to hold Mr. Brown liable for the any alleged debts and obligations of Prodigy under the Lease do not exist here.

49.     At all relevant times, Prodigy has been a duly registered LLC organized and operating under the laws of the State of Delaware.

50.     Prodigy's corporate form was not used for the purpose of committing any fraud or injustice, accomplishing a crime or otherwise evading the law.

51.     Rather, Prodigy entered into and performed under the Lease for the genuine business purpose of developing and operating a juice bar and gymnasium to be located at the Premises.

52.     The fact that the business Prodigy intended to operate at the Premises did not come to fruition hardly implies that such genuine business purpose did not exist.

53.     Moreover, Prodigy has adhered to corporate formalities.

54.     For example, Prodigy has maintained a discrete and capitalized bank account wholly separate from any accounts held by Mr. Brown, and obtained an Employer Identification Number with the Internal Revenue Service.

55.     Next, Prodigy was not undercapitalized.  Until it became clear that the business venture for which Prodigy entered into the Lease would not come to fruition, the bank account held by Prodigy held sufficient funds to satisfy Prodigy's business objectives and obligations.

56.     Further, it is apparent that Prodigy is not merely an instrumentality or alter ego of Mr. Brown.

{S1208107.1}

8

57.     As set forth in the Prodigy LLC Agreement, as the Manager of Prodigy, ABA had the exclusive right, power and authority to manage Prodigy and to "do all things necessary and proper to carry out the objectives and businesses of [Prodigy] and the duties of a Manager hereunder and under the Act." Ex. A § 8(a).

58.     Mr. Brown has at no point exercised sole or exclusive dominion or control of Prodigy.

59.     Given these circumstances, piercing Prodigy's corporate veil to reach Mr. Brown would be unjustified and unwarranted.

60.     There is an actual and justiciable controversy between the Plaintiffs on one hand and the Domzalskis on the other with respect to whether Mr. Brown may be held personally liable for any alleged amounts due and owing under the Lease. *See* 28 U.S.C. § 2201.

61.     The requested declaration will resolve this controversy between Plaintiffs and the Domzalskis.

WHEREFORE, Plaintiffs, Prodigy Properties, LLC and Antonio Brown, respectfully request that this Honorable Court enter judgment declaring the following:

(a) The Lease is between Prodigy and the Domzalskis and Mr. Brown is not a party in any capacity to same;

(b) Mr. Brown is not personally liable for any alleged amounts due and owing to the Domzalskis under the Lease on a veil piercing theory or otherwise;

(c) To the extent the Domzalskis are entitled to payment of any amounts outstanding under the Lease, any obligation or responsibility to pay such amounts is the sole and exclusive obligation or responsibility of Prodigy;

(d) Mr. Brown is not the alter-ego of Prodigy; and

(e) Prodigy and Mr. Brown shall be awarded such further relief as may be necessary and

proper.

Dated:  June 1, 2018                                    Respectfully submitted,

*/s/ James R. Hankle*
James R. Hankle, Esquire
PA I D. No. 36019
Email: jrh@sgkpc.com
Jennifer P. Richnafsky, Esquire
PA I.D. No. 314764
Email: jpr@sgkpc.com
Nicholas L. Fiske, Esquire
PA I.D. No. 309696
Email: nlf@sgkpc.com.

Sherrard, German & Kelly, P.C.
The Oliver Building
535 Smithfield Street, Suite 300
Pittsburgh, PA 15222
(412) 355-0200

*Attorneys for Plaintiffs Prodigy Properties,*
*LLC and Antonio Brown*